[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13052
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cv-01513-MAP

STEVE VALDEZ,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 23, 2020)

Before MARTIN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Steve Valdez appeals the district court's order affirming the Social Security

Administration's denial of his applications for a period of disability, disability

insurance benefits, and supplemental security income. Valdez contends that the district court erred when it concluded that substantial evidence supported the administrative law judge's[1] finding that he was not disabled. We disagree and affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At the time he applied for disability benefits, Valdez was forty-four years old, had a ninth-grade education, and suffered from sleep apnea, hip problems, depression, anxiety, diabetes, chronic obstructive pulmonary disease, bipolar disorder, poor leg circulation, and heart and kidney problems, among other things. He previously worked as a master baker. After the Social Security Administration initially denied his claim, Valdez requested a hearing before an ALJ.

At the hearing, the ALJ accepted testimony from a vocational expert who Valdez agreed was qualified. The ALJ asked the vocational expert to consider a hypothetical individual who (1) was Valdez's age, (2) had his education and work experience, (3) had the residual functional capacity to perform work at the sedentary exertional level, and (4) was limited to simple, routine, and repetitive tasks as defined in the Dictionary of Occupational Titles as specific vocational preparation levels one and two.[2] The vocational expert testified that the hypothetical individual

---

[1] From here on out, we'll refer to the administrative law judge as the "ALJ."
[2] We'll call the Dictionary of Occupational Titles the "DOT."

2

could not perform Valdez's prior job but that there were three jobs in the national economy that such a person could perform: lens inserter, which had about 6,000[3] jobs available; lens-block gauger, which had about 72,000 jobs available; and order clerk, which had about 24,000 jobs available.  On cross-examination, Valdez's attorney questioned the vocational expert about whether the hypothetical individual could perform those jobs if he or she had certain physical limitations not included in the ALJ's hypothetical.  Relying on the vocational expert's testimony, the ALJ concluded that Valdez was not disabled because he could make an adjustment to other work in light of his residual functional capacity, age, education, and work experience.[4]    Valdez appealed the ALJ's decision to the Social Security Administration's Appeal Council, but it denied his request for review.

Valdez then sought review in the district court, alleging that the ALJ's decision was not supported by substantial evidence.  The parties filed a joint

---

[3] There is some dispute as to whether the vocational expert said that there were 6,000 or 86,000 lens inserter jobs in the national economy.  We'll use the number more favorable to Valdez.

[4] The ALJ used the five-step, sequential evaluation process to determine whether Valdez was disabled.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011); see also 20 C.F.R. § 404.1520(a)(4) (requiring that, if an ALJ finds a claimant not disabled at any given step, the ALJ does not proceed to the next step).  Going step-by-step, the ALJ had to determine whether Valdez (1) was unable to engage in substantial gainful activity; (2) had a severe and medically-determinable impairment; (3) had an impairment, or combination thereof, that meets or equals a specific impairment in the Listing of Impairments, and meets the duration requirement; (4) can perform past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.  See id. §§ 404.1520(a)(4)(i)–(v).  Here, the ALJ's decision to deny Valdez's application was based on step five, and the ALJ's finding on step five is the only issue in this appeal.

3

memorandum raising two issues for the district court to decide: whether the ALJ erred in: (1) finding that Valdez "could perform the job, which according to the selected characteristics of occupations, had a reasoning level of three, when [the ALJ] found that [Valdez] was limited to simple, routine, [and] repetitive tasks"; and (2) "relying on the vocational expert's testimony regarding the number of jobs for the positions of lens inserter and lens-block gauger."

As to the first issue, Valdez argued that the ALJ erred in concluding that he could perform the job of an order clerk because that job required a reasoning level of three under the Department of Labor's general education development scale and "a reasoning level of three is incompatible with [his] limitations to simple, routine tasks." The commissioner of the Social Security Administration disagreed, arguing that "there is no apparent inconsistency between the limitation of simple work and a reasoning level of [three]" and that, even if there was an inconsistency, the error was harmless because the ALJ identified two other jobs—lens inserter and lens-block gauger—that Valdez doesn't dispute he could perform.

And as to the second issue, Valdez claimed that the vocational expert's testimony about the number of jobs available in the national economy for the positions of lens inserter and lens-block gauger was unreliable because it conflicted with a report from the Department of Labor's occupational employment statistics. In response, the commissioner argued that Valdez did not object to the vocational

expert's qualifications or testimony, he did not cross-examine the vocational expert in any way relating to job numbers, and the vocational expert's testimony that a significant number of jobs existed in the national economy constituted substantial evidence.

The district court affirmed the ALJ's decision. Relying on one of our unpublished opinions, the district court first found that "there [was] no inconsistency with a limitation to simple work and a reasoning level of three" and that, even if the ALJ erred, the error was harmless because the ALJ identified two other jobs available in the national economy. The district court then concluded that the vocational expert's testimony that there were a significant number of lens inserter and lens-block gauger jobs available in the national economy was substantial evidence that supported the ALJ's decision. Valdez appeals.

## STANDARD OF REVIEW

In social security appeals, we review the ALJ's decision to "determine whether [the] conclusion, as a whole, was supported by substantial evidence in the record." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1358 (11th Cir. 2018). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this limited review, we may not decide the facts anew, make credibility determinations,

or re-weigh the evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

Rather, so long as the ALJ's decision is supported by substantial evidence, we will

affirm even if the evidence weighs against the ALJ's factual findings. Crawford,

363 F.3d at 1158–59. "We are also required to review de novo whether the [ALJ's]

decision was based on a proper view of the law." Washington, 906 F.3d at 1358.

Finally, we apply harmless-error review to social security cases. See Dorio v.

Heckler, 721 F.2d 726, 728 (11th Cir. 1983) ("We find that the ALJ made erroneous

statements of fact, but we conclude that this was harmless error . . . ."); see also

Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized

that harmless error principles apply in the Social Security Act context.").

## DISCUSSION

On appeal, Valdez raises the same two arguments he made before the district

court. Valdez claims that the ALJ erred in: (1) finding that he could perform the job

of an order clerk in light of his limitation to simple, routine, and repetitive tasks; and

(2) relying on the vocational expert's testimony to conclude that there were sufficient

jobs available in the national economy for the positions of lens inserter and lens-

block gauger. We examine each in turn.

First, Valdez contends that the ALJ erred when it found that he could work as

an order clerk despite being limited to simple, routine, and repetitive tasks. The

DOT assigns a general education development reasoning level to each position.

6

According to the DOT, an order clerk requires a reasoning level of three. See DOT, 209.567-014 (4th ed., rev. 1991). An individual performing a job with a reasoning level of three must be able to "[a]pply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id. App'x C. This reasoning level, according to Valdez, conflicts with his residual functional capacity, which the ALJ determined limited him to simple, routine, and repetitive tasks.

At step five of the sequential evaluation, the commissioner bears the burden of proving that the claimant can perform other work available in the national economy after considering the claimant's residual functional capacity, age, education, and past work experience. Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). To find that a claimant is not disabled under this step, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ may rely on the testimony of a vocational expert as substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1155 (2019). Nevertheless, an ALJ has an affirmative duty to identify and resolve apparent conflicts between a vocational expert's testimony and information in the DOT. Washington, 906 F.3d at 1356.

7

We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three.  But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, see DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, see id. 716.687-030. Valdez has not argued that these jobs are inconsistent with his residual functional capacity, and they are not.  Thus, any error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience.

Second, Valdez claims that the ALJ's finding that there were a sufficient number of lens inserter and lens-block gauger jobs in the national economy is not supported by substantial evidence.  Citing data published in the Department of Labor's occupational employment statistics—which he presented for the first time to the district court—Valdez argues that the vocational expert's numbers were "extremely overstated."[5]  Based on this data, Valdez urges us to conclude that the ALJ's decision was not supported by substantial evidence.

---

[5] According to Valdez, the occupational employment statistics provide that there are less than 1,870 lens inserter jobs available and less than 12,320 lens-block gauger jobs available.

Our review of the ALJ's decision is limited.  We review only whether the ALJ's decision was supported by substantial evidence, and "we will look only to the evidence actually presented to the ALJ."  Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); see also Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting that a reviewing court is limited to the evidence in the administrative record).  Our role on appeal is not to "decide the facts anew."  Moore, 405 F.3d at 1211.

At the hearing, the only evidence presented to the ALJ concerning the number of lens inserter and lens-block gauger jobs available was the vocational expert's testimony that there were approximately 78,000 of them in the national economy.  Valdez didn't present the occupational employment statistics before the ALJ or object to the vocational expert's testimony.  In fact, he stipulated that the vocational expert was qualified to testify.  As a result, we are foreclosed from considering the data in the occupational employment statistics on appeal.

We are left with the vocational expert's testimony that Valdez was able to work in 78,000 jobs in the national economy.  We've held that a similar number of available jobs was substantial evidence to support the ALJ's finding on step five.  See Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (upholding an ALJ's finding that jobs that the claimant could perform existed in significant numbers based on a vocational expert's testimony that 80,000 jobs existed nationwide).  It is here, too.

9

## CONCLUSION

For these reasons, the district court did not err when it affirmed the Social Security Administration's denial of Valdez's applications for a period of disability, disability insurance benefits, and supplemental security income.

**AFFIRMED.**